# Dyer's Appeal.

1. Where a bill in equity is filed to establish a trust in lands, tenements or hereditaments, the written evidence thereof, required by the Act of April 22d, 1856, should contain within itself all that is necessary to enable the Chancellor to declare the trust, and to make a decree in favor of the beneficiaries. If the written evidence fails to supply any essential detail of the trust, parol evidence is incompetent to supply the deficiency.

2. Where, therefore, the holder of the legal title to certain lands, who was the alleged trustee, wrote and signed two private letters to one of the alleged cestuis que trustent, in which inter alia he admitted the existence of a trust, but failed to set forth who were the cestuis que trustent, in what proportions they were to take, or what was the exact nature of the trust, and an attempt was made to supply these deficiencies by parol testimony :

*Held*, that such testimony was inadmissible ; that, assuming (but not deciding) that these letters, had they been sufficiently specific, would have raised a trust under the Act of 1856, yet as they failed to set forth certain essential details of the trust, they were insufficient to establish the trust under the Act of April 22d, 1856.

3. The propriety in suits in equity of the court below entering a pro forma decree. or not filing an opinion in the disposition of the cause, criticised and commented upon.

October 27th, 1884. (Re-argument). Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas No. 1 of *Allegheny county*, sitting in Equity : Of October and November Term, 1884, No. 233.

This was an appeal by Samuel Dyer, guardian of Edwin T. Ray, who was a minor child of David E. Ray, deceased, from a decree of the said court, sustaining a bill in equity, wherein Martha Ray et. al., were plaintiffs and Samuel Dyer, as guardian, and Brice Ray, as administrator of David E. Ray, deceased, were defendants.

The bill alleged, substantially, that in December, 1872, Robert R. Ray died intestate, leaving surviving him a widow,

[Dyer's Appeal ]

Martha Ray, and six children, named respectively. Robert, David E., Brice, Martha J., Rachel, and George W. At the time of his death the decedent was seised in fee of six pieces of real estate of unequal value; that shortly after his death the children made an amicable parol partition amongst themselves of these pieces of real estate, whereby two houses and lots at Nos. 28 and 30 N. Diamond street, Allegheny city, were awarded to David E. Ray, and absolute deeds therefor, conveying the said properties in fee, were executed and delivered to David E. Ray by the other heirs; that the appraised value of these two pieces of real estate exceeded the share of David E. Ray in the real estate of the decedent, and was double that of the respective shares awarded to the other children; that by the terms of said amicable partition the said David E. Ray was to pay over to the widow of said Robert R. Ray, deceased, the rents of one of said houses on N. Diamond street, on account of her dower in the said described property during the time he held the title thereto; that the said deed was made to said David E. Ray for said two houses and lots to be held in trust by him and for the purpose of selling the property therein described, and on a sale thereof he was to receive the one half of the proceeds for himself and the other half was to be divided among all of said children so as to equalize the several portions of the said children in the estate of the said Robert R. Ray, deceased; that the purposes of said trust have never been carried out by the said David E. Ray; that David E. Ray died in 1880 intestate, leaving surviving him a minor child, Edwin T. Ray, of whom Samuel Dyer has been appointed guardian; that the said David E. Ray in his lifetime acknowledged said trusts by writings signed by him, to wit: by his letter written and signed by him, dated St. Louis, Mo., and addressed to his brother, the said Robert Ray, Jr. And also in another letter written and signed by him, dated St. Louis, Mo., and addressed to his brother, the said George W. Ray, copies of which are attached to this bill and made part hereof, and are marked Exhibits "A" and "B." The plaintiffs therefore prayed that the court decree that the said David E. Ray held said property as trustee, and direct that a sale be made by the guardian of said Edwin T. Ray of said property in execution of the trust aforesaid, and that the proceeds of such sale be distributed among the parties thereto as their interests may appear.

An answer was filed by the defendants alleging that they had no knowledge or information of the alleged facts set forth in the bill, and praying that the bill be dismissed.

The letters referred to in the bill and relied upon by the

plaintiffs as a written declaration of a trust by David E. Ray were as follows:

No. 107 S. Main Street, St. Louis, October 13, 1879.

ROBERT RAY, JR.:

*Dear Sir.*—Your favor of the 9th inst. received. You understand very well, when I accepted the Diamond street property, that it was to be held by me, and on being sold, over and above whatever my interest would be in the same, was to be divided *pro rata*, and not until that time. I do not propose to make any sacrifice of the property to gratify the desires any of you may have, and any rents that I receive over and above the one half (to which I am justly entitled) I have held in trust until this time.

Nearly four weeks ago a letter was written to me by Mat., in which she sent rather a gloomy picture of affairs and gave me to understand that mother had at that time only ten dollars in her possession with which to procure the necessaries of life. In order to make her comfortable for the time being and relieve her mind, I at once wrote an agreement and requested the rest of you to sign it, and I would send to her the sum of four hundred dollars, which was a few dollars more than I had on hand at that time. I have since learned that she wanted to have some statement before she would sign an article which was to put bread in her mouth and relieve mother of the distress of mind which she would feel. That article has not been signed by any of you to my knowledge as yet, and not one of us has paid her one cent in the way of dower.

The property is *secure* and I will always consider mother's interest first, and any money from that source I propose to use for her and keep an account of it. I would rather the property was sold and then I would not be bothered about statements and such nonsense every little while. It is an easy matter for you to count how much you owe to mother in the way of dower; $4\frac{1}{3}$ years is the length of time at present.

It is evident to my mind that I do not enjoy the respect, confidence, or brotherly affection of the family (with one exception), and to loan any money under such circumstances would be considered hazardous, and to advance on account of *your interest in the property,* I do not consider the proper thing to do for the reasons above stated.

I have always been disposed to act charitably, when I know the circumstances, but I do not like to be duped. I am short of funds myself, and am obliged to live as economically as possible in order to make ends meet. . . . . .

Yours truly,          D. E. RAY.

[Dyer's Appeal.]

Office of St. Louis Tripoli Co., No. 107 S. Main St.,
St. Louis, Mo., January 3d, 1879.

*Dear Bro.*—Yours of the 30th ult. rec'd, in which you mention money matters, but are not specific. I suppose you mean for rent of the house for the year in which I was out here previous to vacating or leaving home. Had I ever dreamed that any such bill would be presented me for the same, it would have been cheaper for me to have left the house and had my furniture stored until such time as I would determine on future arrangements.

You will remember that all of the time you remained at home after father's death, you never paid mother (who was keeping up the house) any boarding, and I suppose to-day that she must be near the end of her string, and we have never yet paid her any money on account of dower (about $60.00 per year each), and from some of you I do not know where it will come. Had you asked my advice before you got married I would gladly have given it to you, and it would have been contrary to the course you have pursued, knowing well as I did all the circumstances connected with your situation. Having assumed the position you have taken you will now have to make the most of it. As you are aware, there will not be any money coming to you, or any of the rest of them, on account of rents from the houses that I have, as only one half of that is mine, and the rest is withheld on account of claim to which mother is entitled as dower and due by each of us.

The girls should make some arrangements in regard to their future welfare, as their money will not last always. I did not say anything to them when I was there as my mind has been much occupied with other things for several months that I was compelled to quit thinking about many things to take care of my health. The improvements which I put on the house when I went into it still remain and have become your property, for which I was not compensated, and they amount to about $200.00, consisting of kitchen addition, gas fixtures, grates, &c. I never did consider it a claim that I was justly liable for or entitled to pay, and do not owe any man a single dollar now.

In settling the estate according to law I am entitled to over $500.00 for which I have not received anything, and I can claim it and get it, or give you *all* the benefit of not claiming it. If you insist on this claim you can see Brice and after deducting the amount which I have specified, $200.00, he will pay you the difference and you give him a receipt in full and end the matter.          Yours,          D. E. RAY.

The cause was referred to Willis A. Boothe, Esq., as examiner and Master, before whom parol testimony was given by the plaintiffs to prove the fact of the amicable partition of Robert Ray's real estate, as alleged in the bill, the fact that David E. Ray's purpart exceeded in value his share of the estate, and that David E. Ray had verbally admitted the existence of a trust.

The defendants admitted the death of Robert Ray, that the names of his heirs and the quantity of his real estate were as alleged in the bill, that deeds for various tracts of his real estate were executed and delivered to different heirs by the others for a nominal consideration, and that David Ray died as aforesaid, leaving surviving him Edwin T. Ray.

The Master reported the following as his conclusions of law :

. . . . . The position taken by the plaintiffs is a reasonable one, from the fact that this portion, in the amicable partition aforesaid, allotted to David E. Ray, was, according to the values of the said property testified to by John K. Brown (one of the appraisers), really a double portion, the valuation on this property being five thousand dollars, while the others received property differing from two thousand five hundred dollars to eighteen hundred dollars. No explanation is offered of this great difference, although, of course, it is but natural to suppose some reason existed at the time the deed was given to David E. Ray, on the 7th day of June, 1875; and the theory of plaintiffs that in this partition, (which unfortunately was parol), the children had in view the ultimate equalization of all the property, and so put into the hands of one of them the odd piece, to be sold at a future, and as they no doubt thought, a more favorable time, and a division then to be made, seems to the Master a fair conclusion. But the defendants have objected, and there is much force in the position that these letters, even if taken to refer to the trust as set forth, are not sufficient to overturn David E. Ray's absolute deed. That the plaintiffs have not proved a trust at all. As to sufficiency of this proof no authorities have been cited on either side, although it might be expected that this question had been ruled and decided in this state. Yet the able counsel have found nothing beyond the Act of Assembly, which plaintiffs' counsel offer and depend upon. It is in these words: Act of 22d of April, 1856. "All declarations or creations of trusts or confidences of any lands, tenements or hereditaments, and all grants and assignments thereof, shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void." Since the passage of this Act, of course, a trust in lands cannot be

established by parol, but as to the writing necessary, beyond the fact of its being signed by the party holding the title thereof (to the lands in question), we have nothing explicit, but, in the absence of any authorities, the Master is of opinion that the plaintiffs have come within the Act, and have established their case.

Exceptions filed by the defendants to the Master's report were dismissed by the court, and a decree entered " that the said David E. Ray was a trustee of and did hold in trust the said property, Nos. 28 and 30 North Diamond street. city of Allegheny, and that he held the same in trust for himself and the other heirs at law of Robert R. Ray, deceased, and that upon a sale thereof to be hereafter ordered, of the said property, one half shall belong to the heir of David E. Ray, deceased, and the other half to be divided among the heirs of Robert R. Ray, deceased, as their interests may appear."

The court filed no opinion.

Samuel Dyer thereupon took this appeal, assigning as error the dismissal of his exceptions and the action of the court in declaring the alleged trust.

*James H. Porte* (with him *John C. McCombs*) for the appellant.—The letters written by the David E. Ray were insufficient to establish a trust under the Act of April 22d, 1856. The Act certainly contemplated only such declarations in writing as were clear and explicit sa to the subject matter, the parties, the nature and character of the trust, and the time of its execution. These letters are deficient in these respects; they meet none of the above requisites. No trust can be made out of their contents, and the Master in declaring the trust was compelled to supplement the letters with parol testimony. This cannot be done. It is clearly contrary to the letter and spirit of the Act of 1856.

*C. Hasbrouck* (with him *A. S. Miller*) for the appellees.— This is the case of a trust arising *ex maleficio*, and as such within the exception of the Act of 1856. Where one obtains a title which he could not have obtained except by a confidence reposed in him, and abuses the confidence, he becomes a trustee *ex maleficio:* Seichrist's Appeal, 66 Pa. St. 237.

Mr. Justice PAXSON delivered the opinion of the court January 5th, 1885.

That this case is not free from difficulty may be inferred from the fact that of our own motion we ordered a re-argument. In its consideration we have not been aided by the court below, no opinion having been delivered by the learned judge

who decided the case. We have had occasion to criticise the practice of sending up cases in equity without an opinion, and in several instances in which a mere pro forma decree had been entered, we denied a hearing here, and sent the case back that it might be argued before, and properly considered by, the court below. A decree without an opinion gives us no clue to the reasonings or the principles which induced the decision, and we are thus deprived of the aid which we are entitled to receive from the learned and able judges of the Common Pleas. Without a careful examination of an equity case by the court below, and the expression of its views in writing, we might as well, for all practical purposes, hear the case directly upon exceptions to the report of the Master, and thus perform the double duty of common pleas and appellate judges.. The vast volume of business which now passes through this court, greatly exceeding what it was only a decade ago, renders these remarks necessary.

The bill sets out a parol partition between the heirs of Robert R. Ray, deceased, late of the city of Allegheny, by means of which David E. Ray, one of the heirs, received two houses and lots, Nos. 28 and 30 North Diamond street, at a valuation of $5,000. This was alleged to have been double the value of his share, and the allegation was that he was to hold one of the houses in trust for the other heirs, and when sold the proceeds were to be divided among them so as to equalize the shares. And as a part of said trust, the rents of one of said houses until sold were to be paid to the widow of said Robert R. Ray on account of her dower generally in the estate. This brief statement of the trust is believed to be sufficient to an understanding of the case. It is proper to say, however, that no declaration of said trust was made in writing at the time the partition took place. David E. Ray having died seised of both houses, this bill was filed by the widow and heirs of Robert E. Ray against his administrator, and against the guardian of his minor child, for the purpose of having the trust declared, and to procure a decree against said guardian to sell the property in execution of the trust. The court below granted the prayer of the bill, from which decree the guardian has taken this appeal.

The complainants below are met at the threshold of their case by the Act of 22d April, 1856, which is in these words: "All declarations or creations of trusts or confidences of any lands, tenements or hereditaments, and all grants or assignments thereof, shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void."

To avoid this difficulty, the complainants produce two

letters of David E. Ray, one written to his brother, Robert Ray, Jr., under date of October 13th, 1879, and the other, written by said David E. Ray. to his brother, George W. Ray, under date of January 3d, 1879. These letters, with the deed, absolute upon its face, for the consideration of one dollar, by which the heirs conveyed these two houses to David E. Ray, constitute the only evidence in writing to sustain the alleged trust. And as the deed, as before stated, is absolute upon its face, and therefore contradicts the alleged trust, we are thrown back upon the two letters in question. Upon them alone the trust must stand or fall.

It is evident they are not the kind of declarations, "signed by the party holding the legal title," as were contemplated by the Act of 1856. They are private letters, written upon other subjects, and with no such object in view. Yet if they contain such a clear admission of the trust, its object, and the parties for whose benefit it is held, as to enable a chancellor to make a decree enforcing it, we might feel it our duty to declare the trust.

Is there such a clear admission? The first letter contains, inter alia, the following: "You understand very well, when I accepted the Diamond street property, that it was to be held by me, and on being sold, over and above what my interest would be in the same, was to be divided *pro rata*, and not until that time. . . . . . It is evident to my mind that I do not enjoy the respect, confidence or brotherly affection of the family (with one exception) and to loan any money under such circumstances would be considered hazardous, and to advance on account of your interest in the property, I do not consider the proper thing to do for the reasons above stated."

The second letter contained the following passages: "As you are aware, there will not be any money coming to you, or any of the rest of them, on account of rents from the houses that I have, as only one half of that is mine, and the rest is withheld on account of claim to which mother is entitled as dower and due by each of us. . . . . .The improvements which I put on the house when I went into it still remain and have become your property, for which I was not compensated, and they amount to about $200, consisting of kitchen addition, gas fixtures, grates, &c. . . . . . In selling the estate, according to law, I am entitled to over $500 for which I have not received anything and I can claim it and get it, or give you all the benefit of not claiming it. If you insist on this claim you can see Bird, and after deducting the amount which I have specified, $200, he will pay you the difference and you give him a receipt in full and end the matter."

The letters to David E. Ray, and to which the letters con-

taining the above extracts are replies, are not given. We are unable, therefore, to gain any light as to their meaning from that source.

It is obvious that since the Act of 1856 a trust cannot be set up by oral testimony. It was said by Mr. Justice STRONG in Barnet *v.* Dougherty, 8 Casey, at page 372: "The plain meaning of the enactment is that a trust in land can now be proved in no other way than by writing." This language was of course used in reference to express trusts, and not to trusts which "arise or result by implication or construction of law," which are expressly excepted out of the Act by the proviso to the fourth section. See P. L. 1856, p. 533.

Do the two letters, taken together, constitute such a writing as will take the case out of the prohibition of the statute? It must be conceded that they contain an admission of the existence of *a* trust. But what trust? Who are the *cestuis que trustent?* And how, and in what proportions do they take? One of the letters speaks of selling the property and dividing the proceeds *pro rata.* But between whom? Just here is the pinch of the appellee's case. For it is in vain that we look to the letters for an answer to these questions. To obtain it we must go outside the letters and supply the omissions by oral testimony. The appellees refer with confidence to the partition to show that the trust is in favor of the heirs of Robert R. Ray; that the allotment to Robert Ray was double in value the share of the other heirs. But all this appears by oral testimony, and the facts which the Master reports as agreed upon only meet a portion of the difficulty. There is nothing in the facts admitted to raise and define the trust. It is but necessary to read the report of the learned Master to see that he was compelled to rely to a considerable extent upon oral testimony to reach his conclusions. And we can safely say that no decree could be made by a Chancellor without such aid. It would be a decree composed of a species of judicial mosaic work, written evidence alternating with oral testimony. It needs but a moment's reflection to see that if we allow this we would seriously impair the Act of 1856. This we are unwilling to do. There never was a time when it was more the duty of the courts to sustain that Act in all its integrity than it is now. The law of evidence as it exists in this state affords great facilities for attempts to set up parol trusts, and the facilities furnish the temptation. The Act of 1856 is the only obstacle in the way, and if that Act should be undermined by judicial construction the result cannot fail to be disastrous.

We regard the true intent and meaning of the Act of 1856 to be, that when a trust is set up, the written evidence

[Allison v. Montgomery.]

thereof, signed by the party holding the legal title, should contain within itself all that is necessary to enable a Chancellor to declare the trust, and make a decree in favor of the beneficiaries, and that oral evidence cannot be introduced to supply any missing links in the chain of testimony. Tested by this rule we are of opinion the plaintiffs below have no case.

The decree is reversed and the bill dismissed at the costs of the appellees.