# Cohen, Appellant, *v.* DeCicco

*Trusts— Resulting trusts— Declaration— Evidence— Sufficiency— Laches.*

A bill in equity to enforce an express trust as to real estate is improperly dismissed, where the trustee signed a definite declaration in writing of the terms under which he held the property. Such declaration could be made in a will; and as it was not testamentary in character, it would not be affected by a revocation of the will.

As the declaration of trust was manifested in writing and signed by the holder of the legal title, in accordance with the provisions of the statute, it was not incumbent on the plaintiff to take any steps looking to its formal establishment by decree in equity until the trustee denied or repudiated the trust, or did some act inconsistent with it which was brought home to the plaintiff. The object and usefulness of express trusts would be greatly interfered with were it otherwise.

Under the circumstances in this case the plaintiff was not guilty of laches.

Argued October 14, 1926.   Appeal No. 161, October T., 1926 by plaintiff from decree of C. P. No. 3, Philadelphia County, September T., 1924, No. 2,208, in the case of Joseph Cohen v. Joseph DeCicco and James DeCicco.   Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ.   Reversed.

Bill in equity to enforce a trust as to real estate. Before MONAGHAN, J.

The facts are stated in the opinion of the Superior Court.

The Court dismissed the bill.   Plaintiff appealed.

*Error assigned* was in sustaining the defendant's demurrer and answer raising preliminary objections to the amended bill of complaint.

*B. A. Illoway,* of *Illoway and Felix,* for appellant.— The delay of ten months does not bar the right to equitable relief in the enforcement of a trust where the pleadings do not disclose a hardship to the defendant, change of circumstances or the intervention of

the rights of third parties. Hansell v. Downing, 17 Pa. Superior Court, 235; Scranton v. Manley, 13 Pa. Superior Court, 439; Youse v. McCarthy, 51 Pa. Superior Court, 311; Montgomery Bros. v. Montgomery, 269 Pa. 332; Ferris v. Henderson, 12 Pa. 49; Ginsburg v. Collins, 84 Pa. Superior Court, 221.

*Roy Martin Boyd*, for appellees.—The trust alleged is a resulting trust, and the appellant is guilty of laches. Artz v. Meister, 278 Pa. 583; Gilchrist v. Brown, 165 Pa. 275; Gates v. Keichline, 282 Pa. 584; Johnson v. McCue, 34 Pa. 180; Smith v. Tuit, 127 Pa. 341; Kinter v. Commonwealth Trust Co., 274 Pa. 436; Dalzell v. Lewis, 252 Pa. 283; Ginsburg v. Collins, 84 Sup. 221; Lavan v. Menaker, 280 Pa. 491.

OPINION BY KELLER, J., March 3, 1927:

This is a bill to establish a trust in favor of the plaintiff as to an undivided one-third interest in two pieces of real estate in the City of Philadelphia, to-wit, premises No. 1150 South Thirteenth Street and No. 1149 South Clarion Street.

The defendants filed an answer raising objections in law to the plaintiff's bill, in the nature of a demurrer—(See Equity Rule No. 48)—and the court below sustained the objections and dismissed the bill.

The grounds relied upon to sustain this disposition of the suit were that plaintiff was barred from obtaining the relief sought for by (1) the Statute of Limitations contained in the Act of April 22, 1856, P. L. 532; and (2) by laches.

After full consideration of the case we are of opinion that neither position is tenable and that the bill was wrongly dismissed.

(1) In the first place counsel for the defendants is in error in contending that plaintiff relies upon a resulting trust; his right is grounded on an express declaration of trust manifested in writing and signed by the party holding the legal title. The preliminary

averments in the bill as to the purchase of the real
estate by the plaintiff and defendants jointly for
$2600, and the means adopted for raising the pur-
chase money are but explanatory of the contract en-
tered into between the parties giving rise to the trust
(Bispham's Equity, sec. 66) which was subsequently,
but within three years, declared and manifested in
writing and signed by Joseph DeCicco, the holder of
the legal title. This was that each of the defendants
was to contribute $150 toward the purchase money,
that plaintiff was to secure a mortgage loan of $2300
and pay the costs and expenses incident to the settle-
ment, which amounted to approximately $65, it being
agreed between the parties that plaintiff's cash con-
tribution need not be as large as that of the defend-
ants because of his services in negotiating the pur-
chase of the properties and obtaining the mortgage
loan aforesaid; that title was to be taken in the name
of said Joseph DeCicco, who was to hold the said real
estate in trust for the plaintiff and the defendants in
equal thirds; and that pursuant to said contract and
agreement the purchase money was so raised and paid
and title so taken on December 3, 1915.

The bill avers that subsequently, on October 2, 1918,
the said Joseph DeCicco, being called to military serv-
ice in the war, made his last will and testament in
writing duly executed and witnessed wherein he de-
clared, inter alia: "I also hereby state that I now
hold in my name premises No. 1121 and 1121½ S.
13th St. and 1131 S. 13th St. and which I hold title
to actually belongs to Joseph Cohen, *1150 S. 13th St.
1149 S. Clarion Street belongs to Jos. Cohen 1/3—
1/3 to James DeCicco and 1/3 to myself subject to
mortgages,* *and 718 Sears St. belongs to me, I direct
my executor that in case I do not return and get
killed to divide my estate as follows...... [here

---

* The subject matter of this suit is italicized for the purposes of
this opinion only.

follows the testamentary disposition of his estate] the property that I have mentioned to go to the person who I now hold title for absolutely, that is to say to Joseph Cohen from whom I hold Title for as above stated, I direct my executor to execute Deed or Deeds to any and all property. . . . . . .I hereby nominate my friend Joseph Cohen to be my executor of this my last will and testament, and to execute all and every paper that may be necessary to fulfill my wishes''; which he thereupon delivered to the plaintiff and a copy of which is attached to the bill as "Exhibit A."

This declaration, though contained in a will, was in no sense testamentary in character. It was not a disposition of the *testator's* property to take effect after his death, but a definite and unconditional declaration that certain described real estate, the title to which was in his name, actually belonged to the plaintiff, the defendant and the latter's brother James in equal shares. While the will might be revoked as a testamentary document, such revocation would not affect the declaration of trust contained in it because it was not a devise or testamentary disposition to take effect after his death, or something to be performed *in futuro,* but the statement of an existing fact. Its effect as an admission or acknowledgment of the plaintiff's one-third interest in the described real estate, and that the testator was a trustee for him as to such interest, could not be destroyed by a revocation of its testamentary provisions. The case is distinguishable from Rader v. Keiper, 285 Pa. 579, in that the trust in that case was attempted to be established by a clause purporting only to devise real estate. Our Act of 1856 (sec. 4), just as the English Statute of Frauds, does not require the trust to be *"created"* in writing but to be *"manifested"* in writing signed by the party holding the title thereof: Ranney v. Byers, 219 Pa. 332, 334. "The distinction is of practical importance, because a subsequent writ-

ten acknowledgment of a trust will cause the interest to relate back to the date of its original creation": Bispham's Equity, sec. 64. "If in writing, the declaration need not be expressed in any particular form of words; even the words 'trust' or 'trustee' need not be used, but the language employed must be such as to disclose with certainty the purpose to create a trust": Ranney v. Byers, supra, p. 334. "The statute of frauds will be satisfied by any writing, no matter how informal. Thus a mere letter or memorandum will be enough": Bispham's Equity, sec. 64. Instances of trusts manifested by informal writings will be found in Ranney v. Byers, supra; McAuley's Est., 184 Pa. 124; Dyer's App., 107 Pa. 446; Raybold v. Raybold, 20 Pa. 308; and Braden v. Workman, 201 Pa. 46, where the declaration would have been sufficient if it had not been forged. See also Lant's App., 95 Pa. 279, 285; Smith's Est., 144 Pa. 428, 437; Eshbach's Est., 197 Pa. 153, 157.

There can be no doubt of the sufficiency of the declaration in this case. It was in writing signed by the holder of the legal title, acknowledged the trust in sufficient words and designated "a definite subject and a certain or ascertained object." The description of the subject matter was sufficient under the rulings of the Supreme Court in Ross v. Baker, 72 Pa. 186; Henry v. Black, 210 Pa. 245; Ranney v. Byers, supra.

As the declaration of trust was manifested in writing and signed by Joseph DeCicco within five years of the creation of the trust (Lee v. Hamilton, 218 Pa. 468, 471) it was effectual, and the limitation imposed by Section 6 of the Act of 1856 on implied or resulting trusts in parol was not applicable.

(2) Nor are we of opinion that the plaintiff was barred from enforcing the trust by laches. As the declaration of trust was manifested in writing and

signed by the holder of the legal title in accordance with the provisions of the statute it was not incumbent on the plaintiff to take any steps looking to its formal establishment by decree in equity until the trustee denied or repudiated the trust, or did some act inconsistent with it which was brought home to the plaintiff. The object and usefulness of express trusts would be greatly interfered with were it otherwise. The bill recites nothing by way of denial or repudiation of the trust by the trustee until November, 1923, when plaintiff first learned that Joseph DeCicco had about fifteen months previously executed and delivered to James DeCicco a deed for a one-half interest in the premises in suit, and at once demanded the conveyance to him of his third interest, which was refused. Without such refusal the mere conveyance of a one-half interest in the real estate to James DeCicco, even if plaintiff had known of it, would not, of itself, have put the latter on notice that the trustee denied or repudiated the trust; for he still held title to more than enough to cover the plaintiff's interest in the property. This suit to establish and enforce the trust was brought about ten months after such refusal.

It has frequently been decided that "laches is not to be imputed from the mere lapse of time alone; the question is one involving equitable principles and is determinable from the particular facts": Scranton v. Manley, 13 Pa. Superior Ct. 439, 444. In order to justify a holding that the plaintiff has lost, through laches, a right founded in express contract, it must appear that he has been guilty of some omission which would warrant the presumption that he had abandoned his claim and declined to assert his right. "Laches is not to be imputed to a party from mere lapse of time alone; it is an implied waiver, arising from knowledge of existing conditions and an ac-

quiescence in them": Hansell v. Downing, 17 Pa. Superior Ct. 235, 239, 240. The correct principle was clearly set forth by former President Judge Rice in Youse v. McCarthy, 51 Pa. Superior Ct. 306, 311, as follows: "In general, laches, as a defense peculiar to suits in equity, involves something more than mere delay, if the period of delay be shorter than that which, under the statute of limitations, would bar an action at law. In such cases the lapse of time during which the plaintiff has knowingly and without reasonable excuse neglected or omitted to assert his right, is to be considered in connection with the general nature of the proceeding, the nature of the transaction involved, the remedy at law, the altered conditions, if any, and all the attendant circumstances, and from the whole the chancellor is to determine whether in equity and good conscience the defense ought to prevail. It results, from the very nature of the defense, that each case as it arises must be decided according to its own peculiar facts, taking into consideration all the elements affecting the question."

There is nothing in the plaintiff's bill in this case that justifies a presumption of his abandonment of his rights under the trust, or establishes that his failure to act sooner had changed or altered the position of the trustee to his detriment in any respect, or that presents any ground in equity and good conscience for refusing to decree an enforcement of the trust which the parties created by contract and which was duly declared in writing, pursuant to the statute.

The assignment of error is sustained. The decree is reversed at the costs of the appellees. The bill is reinstated and it is ordered that the defendants answer on the merits within fifteen days after the return of the record to the court below, under penalty of having the bill taken pro confesso.