Stecko et al. *v.* Salak et al., Appellants.

Argued April 25, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER and JAMES, JJ.

*R. J. Lucksha,* for appellants.

*Louis A. Barmen,* and with him *Gregory Zatkovich,*
for appellees.

OPINION BY STADTFELD, J., October 3, 1934:

On September 2, 1932, plaintiffs filed their bill of
complaint against the individual defendants named,
and the McKees Rocks Trust Company, on behalf of
themselves and any other members of St. Stephen's
Lodge of McKees Rocks, Pennsylvania, an unincorpo-
rated association, who have an interest in the subject
matter of this case, averring that on or about Septem-
ber, 1920, complainants, and other individuals men-

tioned, together with individual defendants named, organized and formed an unincorporated association in the nature of a local beneficial association, assuming the name or title of "St. Stephen's Lodge of McKees Rocks, Pa.;" that the membership consisted of the individual plaintiffs and defendants named and certain others now deceased; that the said lodge operated and functioned until on or about September 17, 1922, when the society was disbanded and ceased to function; that on February 26, 1921, a fund accumulated from the collection of dues from its members was deposited by the proper officers of said unincorporated association in the amount of $750 in the McKees Rocks Trust Company to the credit of said unincorporated association; that said trust company inadvertently and by error placed same to credit of "St. Stephen's Lodge No. 69," being the title of a lodge to which said members of the unincorporated association belonged prior to the formation and organization of said unincorporated association bearing the name of St. Stephen's Lodge, and that said fund, with its accumulations, is the property and money of said disbanded unincorporated association, St. Stephen's Lodge, and should be equally divided between all the members of said association; that all of the members, except the individual defendants, have expressed a willingness and desire to have said moneys, deposited as aforesaid, divided equally between them, and said individual defendants have stopped payment thereof by said trust company. The bill prayed for an injunction restraining said trust company from paying the moneys on deposit with it by the St. Stephen's Lodge until further order of the court, and for a decree that the said moneys be decreed to be the property and moneys of the then members of said unincorporated association, the individual plaintiffs, and individual defendants, in equal shares, and that the trust company be directed to pay the same accordingly.

The defendants filed their answer denying the allegations of the bill. It was contended that there was and still is only one unincorporated association, namely: St. Stephen's Lodge No. 69, a subordinate lodge of the Ukrainian National Aid Association (formerly National Mutual Aid Society), an incorporated fraternal beneficial society. It was further alleged by defendants that plaintiffs, after unsuccessfully attempting to disrupt said St. Stephen's Lodge No. 69, did eventually secede therefrom and from the affiliated parent body, by going to a Scranton organization and carrying with them a part of the property of said Lodge No. 69. It was further alleged by defendants that the fund sought to be divided is and has always been the property of St. Stephen's Lodge No. 69; that there was no mistake in opening the account under that designation, that there was a deposit card which three of the defendants as officers of Lodge No. 69 had on file in the bank, and that furthermore, plaintiffs being chargeable with unconscionable conduct and gross *laches* have no standing in a court of equity.

A replication was filed and the case was heard upon bill, answer and replication. An adjudication and decree *nisi* was filed by SNEE, J., granting the prayer of the bill and issuing a restraining order. Thereafter exceptions *ex parte* defendants were filed to findings and conclusions of the chancellor, and decree *nisi*, and the case was argued before the court *in banc*. Said exceptions, excepting two which were sustained, and which it is not necessary to refer to here, were dismissed and a final decree entered. From said decree this appeal was taken.

The chancellor, SNEE, J., found, inter alia, the following facts: In 1916, the individual plaintiffs and defendants named in the bill, together with nine others who are now dead and have no interest in this proceeding, organized a certain subordinate branch or

lodge of the National Mutual Aid Society (now known as the Ukrainian National Aid Association of America), said subordinate branch or lodge assuming the name of St. Stephen's Lodge No. 69 of McKees Rocks, Pennsylvania.

The National Mutual Aid Society, now known as Ukrainian National Aid Association of America, is a corporation not for profit, and was chartered by the Court of Common Pleas of Allegheny County in 1916 as a fraternal beneficial society under a lodge system for the purpose of relieving its members in distress and paying of death benefits.

The by-laws of said national association contained, inter alia, the following provisions: "Par. 156. No subordinate branch shall make any reduction from an assessment, but shall remit the full amount thereof to the supreme financial secretary. The branch shall remit such amount of dues as is specified in the books of the supreme assembly which defines it according to the number of members. It is understood that the assessment shall be paid not later than on the 30th of each month."

"Par. 159. In case a remittance in full of an assessment due from a subordinate branch is not received by the supreme financial secretary within the time specified in section 156, the supreme secretary shall inform the officers of the branch that within ten days the branch must pay in full its assessment due, and if branch shall fail to comply with this requirement it will be suspended."

"Par. 162. Any subordinate branch suspended for non-payment of an assessment will be entitled to reinstatement on the receipt by the supreme treasury, of the amount due at the date of its suspension, together with all regular and special assessment occurring and accrued during the time of such suspension

488

which shall not be longer than 30 days from the date of suspension.''

"Par. 163. Any subordinate branch suspended for non-payment of an assessment, failing to reinstate itself by the payment of such within the period of thirty days from the date of its suspension, shall become dissolved.''

In July of 1920 said Ukrainian National Aid Association of America, by its secretary, one Kuzmich, in writing, notified said subordinate branch or lodge No. 69 that unless their arrearages or dues were paid in full before the expiration of said month, said subordinate lodge would be suspended and stricken from membership in said Ukrainian National Aid Association of America.

That said subordinate branch No. 69 was formally and officially suspended and expelled from membership by the said National Mutual Aid Society for failure to pay their assessments, by virtue of the authority given the Ukrainian National Aid Association of America to do so by said paragraph 163. That said subordinate branch No. 69 was never legally reinstated as a subordinate lodge of the Ukrainian National Aid Association, and from on and after July, 1920, ceased to be a subordinate lodge of the Ukrainian National Aid Association of America.

The records of the Ukrainian National Aid Association of America show that said subordinate lodge was not carried on its books as one of its subordinate lodges from July, 1920 until June, 1922, during which time no assessments were received by said association from said local branch.

That on September 17 [19] the former members of said St. Stephen's Lodge No. 69 met and formed, by unanimous action, an independent society for benevolent purposes under the name and title of St. Stephen's Independent Society of McKees Rocks, Pennsylvania.

That said independent society continued to function as an independent society, having no connection with the Ukrainian National Aid Association of America, or any other parent organization whatsoever until about February, 1922, when said independent society was dissolved and disbanded by reason of the fact that the entire membership withdrew therefrom, twenty-three joining the Ukrainian Working Men's Society of Scranton, Pennsylvania, and the balance rejoining the Ukrainian National Aid Association of America, and were given the right by the latter to use the name of "St. Stephen's Lodge No. 69."

Timko Maly of the defendants was president of the St. Stephen's Independent Society of McKees Rocks, Pennsylvania, in the year 1920 and Mitro Salak, of the defendants, was president in the year 1921.

On February 26, 1921, a fund accumulated by donations and assessments paid by the individuals constituting the plaintiffs and defendants, amounting to $750, was deposited by Mitro Salak, one of the defendants, Peter Kaloman (now deceased) and Mike Stecko, one of the plaintiffs, in the McKees Rocks Trust Company. Said account was opened by said individuals without any authority from the said St. Stephen's Independent Society of McKees Rocks, Pennsylvania, in the name of St. Stephen's Lodge No. 69. The said deposit of $750, together with accrued interest to December 1, 1932, amounts to $1,194.22.

We have carefully read and examined the entire testimony and are of the opinion that it fully supports the findings of the chancellor, and these findings justify the decree appealed from. In large part, the testimony ex parte defendants establishes the facts on which the decree is based. These findings will not be reversed except for manifest error: Byers v. Byers, 208 Pa. 23, 57 A. 62; Mackintyre v. Jones, 9 Pa. Superior Ct. 543.

The defendants contend that lodge No. 69 was not dissolved, and that the plaintiffs, who were a majority of the members of said lodge, withdrew or seceded therefrom and thereupon terminated their rights to participate in this fund, and their ownership in any of the property possessed by the lodge, and that they, the defendants, and they alone, are entitled to the entire fund in controversy.

The cases cited by appellants, and on which they rely, are cases where part of the membership of a subordinate lodge seceded from the parent organization, and the remainder remained loyal to the lodge and order. Under such circumstances, as stated in Schriner et al. v. Sachs et al., 253 Pa. 611, 617, 98 A. 724, "........ members of a subordinate division of an association cannot, against the will of the minority, transfer its property and assets to another association, and thus divert it from the purpose originally intended." These cases and the principle stated do not control or apply to the instant case. In the latter there was no secession, but a suspension and expulsion from membership by the National Association in 1920, under the by-laws, for non-payment of dues and assessments.

According to the testimony of Wazyl Shabatura, supreme secretary of Ukrainian National Aid Society, the St. Stephen's Lodge No. 69 did not appear on the books of said association when he assumed office in November, 1920, and that it was not until June, 1922, that the seven members of St. Stephen's Lodge No. 69, appellants herein, were taken back into membership of said association and were given the right to use the name of "St. Stephen's Lodge No. 69." He further testified that no dues were received by the national association from the original St. Stephen's Lodge No. 69 from July, 1920, until June, 1922, and that said arrearages had not been paid to the date of hearing. The testimony further showed that the seven appel-

lants who rejoined the national association in 1923 were reinstated without payment of their arrearages, on condition that their arrearages would be paid out of their share of the funds involved in this case. In addition to the failure of the original subordinate lodge to avoid suspension and dissolution under the by-laws, it functioned as an independent organization under the name of "St. Stephen's Lodge of McKees Rocks, Pa.," until June, 1922, when said independent organization was dissolved by all the members withdrawing therefrom, the seven appellants rejoining the national organization, under the condition hereinbefore mentioned, and the appellees joining the Ukrainian Workingmen's Association with headquarters at Scranton.

So far as the national association is concerned, St. Stephen's Lodge No. 69 was automatically dissolved when not reinstated under the by-laws within thirty days. No further action was necessary. The subordinate lodge lost its allegiance and its rights on not being reinstated, and became, automatically, an independent organization, with no allegiance to any other body, independent of any resolution which may have been adopted. It was not a secession from the parent organization, because of a division among the membership, but because of the action of the national association which created the situation. The reinstatement two or three years later, of the seven appellants, did not have the effect of transferring either to them, or to any other subordinate lodge subsequently formed, the funds or property accumulated by the former members as an independent body, after their suspension from the National Association. These funds and property belong to the membership of the independent body, as constituted at the time of their accumulation and deposit. The fund in question was ear-marked as the fund of said lodge, and the name under which

it was deposited with the McKees Rocks Trust Company could not change the ownership thereof.

The language in the opinion in the case of Wolf v. Limestone Council, 233 Pa. 357, at p. 362, (82 A. 499) is most pertinent: "When the forfeiture of the charter was declared the state council of the Junior Order of United American Mechanics did not take over the property of the defendant council, and the reissue of the charter to the plaintiffs, after a lapse of more than six years, would not serve to vest in them, or in the lodge organized by them, the property in question; ......"

The question of laches, in our opinion, does not arise in this case. It was in the power of any party interested, either appellants or appellees, to have filed a bill at any time. No one has been misled or injured by the delay. Mere lapse of time before bringing suit without change of circumstances will not constitute laches: Newberry v. Wilkinson, 199 Fed. 673. Not only must there have been unnecessary delay, but it must appear that by reason of the delay, some change has occurred in the condition or relations of the property which would make it inequitable to enforce the claim: London & San Francisco Bank v. Dexter, Horton & Co., 126 Fed. 593, 61 C. C. A. 515; Demuth v. Bank, 85 Md. 326, 37 A. 268; Halstead v. Grinnan, 152 U. S. 412. Plaintiff appellees did not assert ownership on their part alone, but sought an equitable division among all the parties interested, appellants and appellees alike. Under the circumstances, equality is equity. We think a proper decree was entered by the lower court.

The assignments of error are overruled and decree affirmed at cost of appellants.