Cooper et ux. v. Gettier

**430**

*Henry C. Harner* and *John W. Mentzer*, for petitioner.
*Edmund C. Wingerd*, for respondent.

SHEELY, P. J., August 14, 1936.—This is a petition filed by the State Workmen's Insurance Fund praying to be subrogated to the judgment recovered by Bessie Cooper against John E. Gettier. The facts are as follows:

On October 14, 1933, Bessie Cooper, an employe of the Harris Hotel, was injured by an automobile operated by John E. Gettier. As an employe, she made a claim for compensation under the provisions of The Workmen's Compensation Act of 1915 against the Harris Hotel. An award of compensation was made, under which the State Workmen's Insurance Fund paid a total of $422.84, representing compensation and medical expenses for the first 30 days of disability.

On March 17, 1934, Bessie Cooper and Oral Cooper, her husband, instituted an action of trepass against John E. Gettier claiming damages for the injuries received by Bessie Cooper. In the statement of claim Bessie Cooper claimed $10,000 as damages for pain, suffering, and disfigurement, but made no claim for loss of earnings. Oral Cooper claimed $5,000 for expenses incurred by him in connection with the injuries to his wife, consisting of hospital, medical, and nursing bills, and for loss of his wife's society, etc. The case was tried before a jury and resulted in a verdict against defendant in favor of Bessie Cooper for $500 and in favor of Oral Cooper for $911.50, the $500 being designated by the jury as "damages" and the $911.50 as "expenses".

Subsequently, on June 11, 1935, an agreement was entered into between the parties and duly filed of record, under which defendant agreed to pay to plaintiffs the sum of $400 in cash on June 11, 1935, and to transfer to plaintiffs his 1935 Plymouth sedan within 10 days from that date, and to pay plaintiffs the further sum of $200 in cash within six months from June 11, 1935, and to pay all costs within one year from that date. These payments were to be in full settlement of the verdict and accumulated interest.

Defendant made the required payment on June 11, 1935, of $400 and transferred his automobile to the plaintiffs. He defaulted in the payment of $200 due on December 11, 1935, and plaintiffs agreed to extend the time for this payment until June 9, 1936.

On June 8, 1936, the State Workmen's Insurance Fund filed this petition, later amended on June 13, 1936, praying to be subrogated to the rights of Bessie Cooper to the extent of the compensation and the medical expenses paid to said Bessie Cooper, and further praying that an order be made directing the sum of $422.84 be set apart from the verdict for the use of and to be paid to petitioner.

On June 9, 1936, defendant, John E. Gettier, appeared in open court prepared to pay the balance of $200 due under his agreement and was directed by the court to pay that sum into court pending determination of this rule.

An answer has been filed by Oral Cooper and Bessie Cooper denying the right of the petitioner to be subrogated to any part of the verdict against defendant. No testimony has been taken, and we have before us merely the petition and answer.

Plaintiffs, respondents in this rule, deny the right of petitioner to subrogation because (1) the verdict in favor of Bessie Cooper did not include loss of earnings or medical expenses, and these items were not claimed by her in her statement of claim; (2) the portion of the verdict applicable to expenses was in favor of Oral Cooper, to whose rights petitioner cannot be subrogated; (3) peti-

tioner did not join in plaintiffs' action against defendant and did not offer to pay any of the expenses incident thereto, which payment is a condition precedent to its right to subrogation under condition "H" of its policy; (4) all of the amount actually recovered has been paid except the sum of $200 paid into court, of which $100 is payable as attorneys' fees; (5) petitioner has lost its right to subrogation by laches.

## Discussion

In considering this matter we must first eliminate any possible rights or liabilities as between defendant Gettier and the fund. He is not a party to this proceeding, and the fund is not now asserting any rights against him, as was the case in Smith v. Yellow Cab Co., 288 Pa. 85 (1927). We are here concerned only with the rights of the insurance carrier and the employe and her husband in the judgment recovered by the latter. It must also be kept in mind that the rights of the employer and his insurance carrier are the same.

Petitioner's right to subrogation is based upon section 319 of The Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §671, which provides, in part:

"Where a third person is liable to the employe . . . for the injury . . . the employer shall be subrogated to the right of the employe . . . against such third person, but only to the extent of the compensation payable under this article by the employer."

Condition "H" of the insurance policy issued by petitioner provides:

"Subrogation. In case of the payment of compensation or any medical, hospital, funeral or other expenses under this policy, the Fund shall be subrogated to all the rights of the employer and of any employee or dependents covered hereby to the extent of such payment, and the employer, employee, or dependents shall execute all papers required, and shall coöperate with the Fund to secure its rights, and shall assist in bringing and prosecuting any

legal action provided that the expenses thereby incurred shall be assured entirely by the Fund."

Under the act the employer (or his insurance carrier: Mayhugh v. Somerset Telephone Co., 265 Pa. 496) may secure his right to subrogation in any one of several ways: He may appear and intervene in the action against the third person as a use-plaintiff: Neal, to use, v. Buffalo, Rochester & Pittsburgh Ry. Co., 103 Pa. Superior Ct. 218 (1931) ; or he may permit the employe to sue and recover a judgment and then be subrogated to that judgment: Mayhugh v. Somerset Telephone Co., supra; or in the event the employe or his dependents refuse to sue the third party, the employer or his insurance carrier may do so in the name of the injured employe: Scalise v. F. M. Venzie & Co., Inc., et al., 301 Pa. 315 (1930).

It is obvious that the last situation mentioned is the one provided for in the latter part of condition "H" of the policy, and that under this condition the fund is not obligated to do anything unless it brings the action and requests the employe to execute the necessary papers. The insurance carrier need not join in the employe's action even though requested so to do by the employe: Wilson v. Pittsburgh Bridge & Iron Works, 85 Pa. Superior Ct. 537, 542 (1925). This conclusion disposes of the third contention of plaintiff above set forth.

Bessie Cooper contends that it would be unjust for the insurance carrier to take from her the amount of damages she received for pain and suffering to reimburse it for the amount paid by it on account of her loss of earnings. She relies upon a California case. In that case, Jacobsen v. Industrial Accident Comm. et al., 212 Cal. 440, 299 Pac. 66, 68 (1931), the court said "it must be assumed that inherent in a judgment for damages recovered by an injured employee there may be the element of compensation for past physical pain and mental suffering . . . not affecting his ability to work. . . . It would be manifestly unfair to the employee, having assumed the hazard and expense of litigation, to have the amount of the judgment

attributable to these elements of damage consumed by any award made by the Commission."

That case would seem to cover the situation here disclosed if we follow the reasoning of the California court. The effect of that decision would be that in each case of subrogation the court would be compelled in some way to determine how the jury apportioned its verdict among the various elements of damage which it is permitted to consider. Under our practice the jury would not be permitted to schedule its allowance of damages and the court would therefore be required to make a deliberate guess as to what the jury had in mind. This would be an impossible task. Nor do we feel that either our statute or sound reason demands this conclusion. Ordinarily there is submitted to the jury by the testimony at the trial a statement of plaintiff's loss of earnings and his expenses. It is inconceivable that the jury, if it found plaintiff entitled to anything, would award him less than the amount of his loss of earnings and his expenses if these items were fairly proved. Anything above that amount would represent the allowance for pain and suffering. No verdict in a personal injury case can be arrived at with mathematical certainty, but the most certain elements in arriving at the verdict are the elements of expense and loss of earnings.

Plaintiff has no reason to complain if the employer is reimbursed out of the verdict recovered against the wrongdoer. Prior to the passage of the compensation acts the employe had to look solely to the wrongdoer for his damages and the employer was not liable for any portion of the employe's loss. The compensation act wisely imposed an additional burden upon the employer for the sole benefit of the employe and to provide for his security. Upon what moral ground can it be argued that the employe should be permitted to retain his compensation paid by the employer and also his judgment against the wrongdoer, which theoretically covers his whole damage?

Our compensation statute does not contemplate that the verdict recovered against a wrongdoer should be broken

down to determine how much, if anything, was included for loss of earnings. The employer is subrogated: ". . . to the right of the employe . . . against such third person. . . . Any recovery . . . in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe . . . and shall be treated as an advance payment by the employer on account of any future instalments of compensation." The expression "any recovery" must mean the total amount recovered, and has so been construed by the courts, although the exact question here presented has not been raised. It must necessarily mean the actual cash received from defendant and not merely the amount of the verdict recovered.

In Wilson v. Pittsburgh Bridge & Iron Works, supra, p. 541, in determining the right to attorneys' fees from the fund recovered, the court said that "in using the word 'recovery' the legislature had in mind the net amount recovered in the action after payment of reasonable fees and necessary expenses". In Lengle et al. v. North Lebanon Twp., 274 Pa. 51, 54 (1922), in passing upon the admissibility in evidence of a compensation agreement in a negligence case, the court said:

"Under the act, the employer or insurance company has the right to be subrogated in any verdict recovered for the amount to be paid by virtue of the compensation agreement".

And in Ellis v. Atlantic Refining Co., 309 Pa. 287, 289 (1932), where it was contended that the employer should be compelled to pay a portion of the expenses of suit, the court said:

"It follows that the expenses of the action must be first deducted from the verdict, after which the employer is entitled to receive, from the balance, the amount of compensation already paid".

To sustain the contention of plaintiff in this case would be to deprive the fund of its right to subrogation, which is expressly given to it by statute. The only basis for this would be to hold that it should have intervened in the ac-

tion and compelled plaintiff to include a claim for loss of earnings in her suit. But the courts have held that the fund need not intervene unless it wishes to: Mayhugh v. Somerset Telephone Co., supra; Wilson v. Pittsburgh Bridge & Iron Works, supra.

Plaintiff knew when she instituted her action against the wrongdoer that the fund was entitled to subrogation in any verdict she recovered. As stated in Wilson v. Pittsburgh Bridge & Iron Works, supra:

"All parties, including the attorney instituting the action, are aware of the respective interests of employee and employer, and of the power of the court to protect those interests if occasion arises."

If, in an effort to keep the recovery as low as possible so as to be able to collect it, she omitted to present a claim for loss of earnings, she took the risk of having her recovery cut down by the amount due her employer.

We hold, therefore, that the employer or his insurance carrier is entitled to be subrogated in any verdict recovered by the employe against the wrongdoer, subject to the prior payment of costs and expenses, regardless of the elements of damage claimed by the employe against the wrongdoer.

Was the fund guilty of such laches as would deprive it of this right? The accident occurred on October 14, 1933, suit was entered on March 17, 1934, the verdict was returned on October 6, 1934, the settlement agreement was made and filed on June 11, 1935, payment of all but $200 was made on June 11, 1935, and the petition for subrogation was filed on June 8, 1936.

In Smith v. Yellow Cab Co., supra, p. 89, the court said:

"We have many times said that subrogation is a matter of pure equity, and is never allowed where it would be inequitable to do so. Consequently, as 'he who would have equity must do equity,' he must neither do nor leave undone anything which results in harm to those who are or may be affected by the subrogation which he claims."

We think that as to the portion of the recovery paid in June 1935 the fund has lost its right to subrogation. Petitioner recognizes this principle, and in its brief insists only upon being subrogated to the $200 paid into court.

In Cohen v. De Cicco, 90 Pa. Superior Ct. 51, 56 (1926), the court said:

"It has frequently been decided that 'laches is not to be imputed from the mere lapse of time alone; the question is one involving equitable principles and is determinable from the particular facts'. . . . In order to justify a holding that the plaintiff has lost, through laches, a right founded in express contract, it must appear that he has been guilty of some omission which would warrant the presumption that he had abandoned his claim and declined to assert his right."

In the present case petitioner is asserting a statutory right which is as strong, if not stronger, than a right founded in express contract. Plaintiff had full knowledge of the right being asserted. There is nothing of record to show that plaintiff would be prejudiced in any way by allowing subrogation to the money paid into court, nor is there anything but the lapse of time upon which to base a determination that petitioner had abandoned its claim. A delay which injures no one will not furnish a reason for refusing relief on the ground of laches: Gribben v. Carpenter et al., 323 Pa. 243.

We conclude that as to the $200 paid into court the petitioner has not lost its right to subrogation.

At the hearing it was developed, and not denied, that $100 of this amount is due to petitioner's attorney. Under the authority of Wilson v. Pittsburgh Bridge & Iron Works, supra, the attorney is entitled to payment before the employer or employe receives anything, and the amount due the attorney must therefore be deducted from the money paid into court. He should not be compelled to lose his compensation because he allowed plaintiff to retain all or part of the first money paid particularly when, as here, a portion of the payment was in the form of an automobile.

438

We come now to the right of Oral Cooper in the balance of $100. While a portion of the verdict in his favor may include a portion of the expenses paid by the fund, there is nothing before us to show that this is the case. The statute provides for subrogation of the employer only to the rights of the employe, and since the right of action of Oral Cooper is a derivative action the fund cannot be subrogated to it. This is recognized by the petition, which merely asks for subrogation to the rights of Bessie Cooper.

Plaintiffs contend that no portion of the balance can be awarded to the fund because there is nothing to show to which of plaintiffs the balance belong. If a portion of the balance does not belong to Bessie Cooper, the plaintiff should have so alleged and proved. Failing in this, we must assume that plaintiffs own the balance in the same proportion that they shared the original recovery which they treated as a lump sum. Oral Cooper's share was .6457. His share of the balance of $100 would therefore be $64.57, and the balance of $35.43 must be awarded to the fund.

And now, August 14, 1936, it is ordered and decreed that the amount of $200 paid into this court on June 9, 1936, in the above matter shall be paid out by the prothonotary as follows: $100 to Edmund C. Wingerd, Esq., $64.57 to Oral Cooper, and $35.43 to the State Workmen's Insurance Fund, the costs of this proceeding to be paid by the State Workmen's Insurance Fund.

From John P. Sipes, McConnellsburg.