## Commonwealth v. Erie Mortgage Company

*David Gifford*, for petitioner.

*Joseph Agresti*, for Commonwealth.

KITTS, P. J., December 31, 1942.—This case comes before the court on a petition to open judgment and, while it is addressed to the equity side of the court, no judgment should be opened under our jurisprudence except in clear cases and especially where it would be the duty of a trial judge to direct a verdict.

"The court, to which application is made to open a judgment, may judge the weight of the evidence and the credibility of the witnesses, and is not bound, even where there is a conflict of testimony, to send the case to a jury. The whole proceeding resolves itself into the exercise of a sound judicial discretion: Augustine v. Wolf, 215 Pa. 558." See Wolfgang v. Shirley, 239 Pa. 408, 410.

This case has been vigorously contested by two of our astute and brilliant young barristers and, in spite of the able argument of learned counsel for defendant, we cannot subscribe to his theories and must refuse to open the judgment.

It appears that the Erie Mortgage Company, a Pennsylvania corporation, was chartered by the Com-

monwealth in 1918, and since that time has operated with its principal place of business in Erie, Pa. On April 17, 1942, the Commonwealth filed a lien against the company for domestic bonus alleged to be due from the company. This claim was based on the Commonwealth's assertion that a bonus of one third of one percent was due April 6, 1925, because of an alleged increase of $26,550 in the capital stock of the company. In addition to the claim for bonus amounting to $88.50, the Commonwealth claimed interest at the rate of six percent from April 6, 1925, to August 20, 1939, and thereafter at the rate of 12 percent per annum. The original amount of the capital stock was $300,000, the said increase having been made by the said corporation on March 6, 1925, the bonus therefore becoming due April 6, 1925. A settlement of this bonus was made by the Secretary of the Commonwealth practically 16 years after it became due. This bonus on capital stock, or on any subsequent authorized increase thereof, is required under the Act of April 29, 1874, P. L. 73, sec. 44, as amended June 15, 1897, P. L. 155, 72 PS §1828.

It is the theory of the Commonwealth that it is fundamental law that a sovereign is immune from the doctrine of laches and the statutes of limitation. As a general proposition this is true. There are, however, numerous exceptions to the rule. Counsel quotes the old familiar maxim, "Nullum tempus occurrit reipublicæ", which brings to mind Blackstone's familiar adage, "Nullum tempus occurrit regi". While this maxim does not apply in all cases, we hold that it does apply in the instant case. Counsel further argues that if the corporation were not called upon to pay this bonus in question it virtually would be excused from knowing and understanding the provisions of the law dealing with the payment of the bonus, and argues that section 44 of the Act of April 29, 1874, P. L. 73, as amended by the Act of June 15, 1897, P. L. 155, specifically requires that:

"Every company incorporated by or under the provisions of this act . . . shall pay to the State Treasurer, for the use of the Commonwealth, a bonus of one-third of one per centum upon the amount of the capital stock which said company is authorized to have, and a like bonus on any subsequent authorized increase thereof."

It is said, inasmuch as the corporation neither made payment of this bonus nor any report thereof to the Commonwealth, that it was because of this situation and similar ones arising throughout the State that the amendment to the Bonus Act was passed on June 21, 1939, P. L. 609, sec. 1. Section 4 of the present law states that it shall be the duty of the president and the treasurer of each corporation to file a return with the Secretary of the Commonwealth within a 30-day period after an actual increase of the authorized capital stock, and provides penalties for noncompliance therewith. It is further maintained that the Commonwealth had no knowledge of the indebtedness due to the failure of the debtor to file returns as required by law, and as soon as a report was filed, in compliance with the amendment of 1939, supra, the Department of State was able to determine the amount of its claim and acted immediately thereon.

On the other hand, it is the theory of the defendant that this claim is barred by the laches of the Commonwealth coupled with the doctrine of estoppel; in other words, that there was a lapse of more than sixteen years occurring between the date when the Commonwealth alleged the bonus became due and the initial demand therefor, and that, meanwhile, the company has come under different management, many of its officers and former directors having resigned or moved away or died and that the records of the company relative to its activities in the period for which the bonus is alleged to be due have been destroyed or disposed of.

We took some testimony at the time of the argument and it is interesting to note that defendant introduced a "Statement of Delinquent Taxes and Bonus", bearing date of January 18, 1932, together with a letter dated January 27, 1932, to which this statement was attached. The statement is divided into four sections labeled: Capital Stock, Corporate Loans, Bonus, Gross Receipts, and on this statement only one of these categories bears any notation of any indebtedness to the Commonwealth, i. e., Capital Stock, wherein a claim for $200, balance of capital stock, was due for 1929. There is also an item mentioned of $1,632.75 listed as capital stock tax due for the year 1930, and the letter accompanying this statement "shows the status of the account as it appeared on the ledgers of the Department of Revenue on the date which is stamped on the statement." This date is January 18, 1932. It is the further theory of the defense that the action and conduct of the Commonwealth tended to lull defendant into a sense of security that it owed nothing excepting the items heretofore mentioned.

Learned counsel for defendant cites Commonwealth ex. rel. v. Union Traction Company of Philadelphia et al., 327 Pa. 497, and quotes Justice Linn as saying in the opinion of the court at page 513: "Estoppel by laches may be asserted against the Commonwealth"; and, further, on page 521: "Estoppel does not depend on time alone but on action and failure to act after knowledge." This case is not in point with the instant case. There the Commonwealth of Pennsylvania by quo warranto proceedings was endeavoring to forfeit the charters of a number of so-called underliers of the Philadelphia Rapid Transit Company, commonly known as P. R. T. In the instant case, of course, we are dealing with an unpaid bonus on capital stock. It has become a trite statement to say that general expressions in an opinion must be considered with re-

spect to the facts before the court: Commonwealth v. Shawell et al., 325 Pa. 497. There should be a distinction made as to the kind of case before the court before applying the doctrine of laches. This distinction is sometimes lost sight of and the rule in rare instances carelessly made to cover all situations. Our appellate courts have, on some occasions, stated that the Commonwealth may be precluded from asserting a right by virtue of its laches notwithstanding the flat statement of Chief Justice Black in Commonwealth v. Erie and North-East R. R. Co., 27 Pa. 339, 360, that "no laches can legally be imputed to the Commonwealth". Counsel for defendant strenuously contends that, by receipt of the item of $1,632.75, supra, claimed on capital stock tax for 1930, the Commonwealth clearly made a claim for this amount only and must have been aware that the valuation of the capital stock in question amounted to $326,550, and therefore is estopped at this late date from claiming anything additional.

It is, therefore, plainly apparent that the question now before the court is this:

"Shall the Commonwealth be permitted to collect a domestic bonus after a lapse of more than sixteen years from the date when it is alleged to have been due, and after the Commonwealth has rendered statements, purporting to show the entire indebtedness of the company to the Commonwealth, which disclose no liability for bonus for the year for which claim is now made?"

We hold that it was the primary duty of the corporation to aid the Commonwealth in reporting this capital stock increase and the amount of bonus due under the Act of 1874, supra. The law explicitly puts this burden upon defendant, as a perusal of the said act will plainly show. When we take into account the voluminous records in the Department of State or in the Auditor General's office; the great number of accounts to settle and collect; the variety of bookkeeping; the various forms

which taxpayers are required to declare; the millions in money that must be audited, settled, and collected; and, in fact, all of the voluminous ramifications incumbent on the Commonwealth in a case of this kind, it would be putting it too broadly to say that on account of the letter and statement, supra, in conjunction with the fact that the corporation, defendant in this case, utterly failed to assist the Commonwealth or to put it on notice that such a bonus account was due, now, even after a lapse of 16 years, the Commonwealth was guilty of laches and is therefore estopped from maintaining its right to collect this item. Was the Commonwealth required to look farther than the required legal report of the defendant on the increase in its capital stock? We think not. Had defendant complied with the law the Commonwealth would not have been lulled into sending the statement referred to above. See Wolfgang v. Shirley, supra. This was a case carried up from the Superior Court and affirmed by the Supreme Court on the opinion of Judge Orlady. At page 410 we find:

"In Story's Equity Jurisprudence, 286, it is declared, 'If one by his acts, or silence, or neglect misleads another or in any way effects a transaction whereby an innocent person suffers loss the blamable party must bear it.' "

Distinction must be made in applying this rule to proceedings instituted in the name of the State on behalf of private individuals or with a purpose of protecting private interests, in which event laches may bar the nominal claim of the Commonwealth. See Curtner v. United States, 149 U. S. 662, United States v. American Bell Telephone Co., 167 U. S. 224, and The People v. The Union Elevated R. R. Co., 269 Ill. 212.

It may be well at this time to state upon what circumstances laches depends, for it is fundamental that lapse of time alone does not control laches. Even in an equity action instituted by private individuals, laches

depends not merely on a lapse of time but on all the circumstances of the case. Laches considers as well the position of the parties involved, the opportunity afforded them to act, their acquiescence, or change in position, the availability of evidence, rights of intervening third parties, the character of the claim and of the parties enforcing it, the relief sought, and, in general, any other matters bearing on equities of the case. See Cohen v. DeCicco, 90 Pa. Superior Ct. 51, Stecko et al. v. Salak et al., 114 Pa. Superior Ct. 483, Hammond v. Hopkins, 143 U. S. 224, Patton et al. v. Commonwealth Trust Co., Exec., et al., 276 Pa. 95, and Kinter v. Commonwealth Trust Co., Exec., et al., 274 Pa. 436.

"The general principle is, that laches is not imputable to the Government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy. The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions:" The United States v. Kirkpatrick et al., 9 Wheat. 720, p. 735.

The reason for the rule is obvious. Public interests and welfare must rise above any conflicting private interests and must not suffer through the failure of a government, through its agents, promptly to assert public rights. The very existence of our Commonwealth, of course, depends upon the collection of its revenues. Therefore, in view of the foregoing, we make the following

### Order

And now, to wit, December 31, 1942, the rule granted May 25, 1942, on the petition to open judgment be and the same is hereby discharged.