Opinion by
Rice, P. J.,
The facts of this case are accurately, clearly and concisely stated in the findings of the learned trial judge, and a restatement of them by us is unnecessary. The only finding of fact that is assigned for error is the seventh; but there was ample evidence, if believed, to sustain it, and the testimony of the plaintiff himself scarcely puts it in doubt. Even if his testimony raised a substantial conflict regarding the fact, still the rule would be applicable, that where the correctness of a judge’s finding of fact, in a case tried before him under the equity rules, depends upon the view to be taken of the direct testimony of witnesses, the finding will not be disturbed by the appellate court, if there be evidence to support it and it is not clearly erroneous. This rule does not permit a perfunctory consideration of the evidence relating to facts in dispute, and is in entire harmony with the doctrine enunciated by Justice Trunkey *311 in Worrall’s App., 110 Pa. 349; but it does attach great weight, and properly so, to the superior opportunity which the trial judge has to judge of the credibility of witnesses: Canavan v. Paye, 34 Pa. Superior Ct. 91.
Complaint is made, in the second assignment of error, of the judge’s conclusion of law “B,” which was, in substance, that, by reason of the plaintiff’s failure to object to defendant’s entry upon the land before the laying of the pipes, etc., and his delay after that in filing the bill, he was precluded, on the score of laches, from seeking a decree enjoining the operation of the pipe and telegraph lines and compelling their removal, or either. When this conclusion is read in connection with the findings of fact, it will be seen that it does not rest alone on the lapse of time during which the plaintiff delayed assertion of his right, but that and other circumstances of great significance. Thus viewed, the conclusion is not erroneous, but is warranted by well-established principles of equity. In many cases equitable relief depends on the discretion of the chancellor, and the laches of the complaint is often one of the most important of the elements which are taken into consideration when that discretion is exercised: Bispham’s Eq. (7th ed.), sec. 39. In general, laches, as a defense peculiar to suits in equity, involves something more than mere delay, if the period of delay be shorter than that which, under the statute of limitations, would bar an action at law. In, such cases the lapse of time during which the plaintiff has knowingly and without reasonable excuse neglected or omitted to assert his right, is to be considered in connection with the general nature of the proceeding, the nature of the transaction involved, the remedy at law, the altered conditions, if any, and all the attendant circumstances, and from the whole the chancellor is to determine whether in equity and good conscience the defense ought to prevail. It results, from the very nature of the defense, that each case as it arises must be decided according to its own peculiar facts, taking into ' consideration all the elements affecting the question; *312 Scranton v. Manley, 13 Pa. Superior Ct. 439; Hansell v. Downing, 17 Pa. Superior Ct. 235. But if it be true, as has frequently been declared, that nothing can call a court of equity into activity but “conscience, good faith, and reasonable diligence,” and that “where these are wanting the court is passive- and does nothing ” (Smith v. Clay, 3 Bro. C. C. 646; Tozier v. Brown, 202 Pa. 359), it is not necessary, in order to sustain the defense, to hold that the plaintiff is estopped by his action or inaction from suing at law for the invasion of his legal right. Therefore, even if it be conceded that the defendant here is not in position to assert that the plaintiff is estopped to maintain such action by his reception and retention of the price the defendant paid to the plaintiff’s assignee for benefit of creditors for the privilege of laying the pipes across his land (see eighth finding of fact), yet it must also be conceded that this is a pertinent and highly significant circumstance to be considered in determining whether he is entitled to equitable relief without tendering or offering to return the money. This and other facts embraced in the findings are pertinent because they tend to show the plaintiff’s acquiescence; and an important if not a principal factor in determining whether a plaintiff has been guilty of laches, is acquiescence: Hansell v. Downing, 17 Pa. Super. Ct. 235; 16 Cyc. of Law & Pro. 158. If, in addition to mere passive negligence, there be a showing of facts amounting to acquiescence in the act complained of, or of other circumstances which, coupled with the delay, will render the granting of the relief inequitable, the chancellor, in the exercise of sound discretion, will refuse to interfere: Stevenson v. Boyd, 153 Cal. 630; 19 L. R. A. (N. S.), 525. Acquiescence in the wrongful conduct of another, by which one’s rights are invaded, may often operate, upon the principle of and in analogy to estoppel, to preclude the injured party from obtaining many distinctively equitable remedies to which he otherwise would be entitled. This form of quasi estoppel does not cut off the party’s title nor his remedy at law; it simply bars his right to equitable *313 relief, and leaves him to the legal actions alone: 2 Pomeroy’s Eq. Juris., sec. 817. A multitude of Pennsylvania cases might be cited to sustain the proposition. Many of them are collected in Good v. Queen’s Run Fire Brick Co., 224 Pa. 496, and that case itself is a good illustration of the proper application of the principle. But no case that can be cited better illustrates it than the one before us. This is well shown by the following excerpt from Judge Endlich’s opinion: “But here, under the facts found, the question is not one of mere lapse of time without change of conditions, and there can be no fair pretense of the existence of any adequate excuse or justification for plaintiff’s nonaction. The case is one of a plaintiff who, before anything important or permanent had actually occurred affecting his interests, possessed adequate knowledge of all that had already been done and all that was intended to be done, and had a clear standing and sufficient opportunity to proceed for the protection of his rights, but chose to he by until the price of the alleged privilege over his land had been paid by defendant and received by himself and the contemplated work completed and put into operation, as a part, of course, of a larger system, and who then for the first time comes into court with a prayer that all this be undone and broken up because in its inception without his express assent. It would seem very plain indeed that the obvious and only possible answer to this prayer must be that it comes too late to be granted. See Gt. West. Ry. Co. v. Oxford, etc., Ry. Co., 3 De G., M. & G. 341-359.” This succinct summary is warranted by the formal findings of fact and the evidence, and clearly indicates the equitable considerar tions which in the opinion of a majority of this court, justify the decree.
The assignment of errors are overruled, and the decree is affirmed at the costs of the appellant.