# Fidelity-Philadelphia Trust Co., etc., v. Wengert et ux.

*William Henry Snyder, Jr.*, for plaintiff.

*H. Eugene Heine*, for defendants.

MILNER, J., March 1, 1948.—Plaintiff filed a bill in equity against defendants, adjoining landowners, to restrain defendants from interfering with its use of a subterranean cesspool located on defendants' land and its use of a subterranean sewer pipe leading from plaintiff's land to the cesspool. Defendants filed an answer denying knowledge of the existence of the cesspool and the connection thereto from plaintiff's land at the time they purchased the adjoining property and denying that the use of the cesspool by occupants of plaintiff's land has been "adverse, visible, notorious, exclusive, continuous and uninterrupted". A hearing was held at which testimony of plaintiff in support

of the bill and of defendants in support of the answer was heard. After the hearing by stipulation of counsel for plaintiff and defendants a survey of plaintiff's property was made part of the record, and plaintiff also filed a motion to show cause why a rehearing should not be had in order to introduce testimony in the nature of after-discovered evidence. In lieu of a further hearing counsel for plaintiff and defendants entered into a stipulation embracing this evidence, subject to objection of counsel for defendants. The objection is overruled and the evidence is admitted as part of the record. From the pleadings and the evidence adduced in the case, including the evidence contained in said stipulation, the chancellor makes the following

## Findings of Fact

1. Plaintiff, Fidelity-Philadelphia Trust Company, trustee under deed of trust of Francis C. Warner et al., dated April 4, 1940, is the owner of premises at the southwest corner of Eighth Street and Oak Lane Avenue, Philadelphia, as more fully described in paragraph 1 of the bill in equity and the survey thereof made part of the record herein. It acquired title thereto by sheriff's deed dated May 14, 1934, recorded in the Office for the Recording of Deeds in and for the County of Philadelphia in Deed Book J. M. H. No. 3822, page 8 et seq. This property is referred to herein as the "corner property".

2. Defendants are the owners of the adjoining property, 6730 North Eighth Street, Philadelphia, more fully described in paragraph 2 of the bill in equity, having acquired it by deed dated October 18, 1941, recorded in the Office for Recording of Deeds in and for the County of Philadelphia in Deed Book D. W. H. No. 1391, page 314 et seq. This property is referred to herein as the "adjoining property".

3. Both properties had been acquired by one Eli L. Klopp, by deed dated March 15, 1897.

4. Eli L. Klopp occupied the dwelling house erected on the adjoining property as a residence from his said acquisition thereof until his death in 1917.

5. On the adjoining property there was an underground cesspool into which sewage was discharged from the residence thereon at the time it was acquired by Klopp and from 1897 until the present time all owners and occupants of the dwelling house have caused sewage discharged therefrom to be drained into the cesspool which has been located during this period of time upon the adjoining property and is still so located.

6. In about 1899 or 1900 Dr. Eli L. Klopp caused to be constructed a building upon the corner property, which building is still so located. This building is built entirely of stone, and the stone came out of the excavation for the building. It was a "store property" designed primarily for business purposes.

7. There were no public sewers in the immediate vicinity of the corner and adjoining properties at the time the building was erected upon the corner property and none have been constructed in that vicinity since that time.

8. To provide sewage disposal for the building located on the corner property, Klopp at the time of such construction caused sewage pipes leading underground from this building to be connected with the cesspool located on the adjoining property.

9. From the time of its construction in 1899 or 1900 until May 31, 1940, the building on the corner property was used continuously for various dwelling and/or commercial purposes, and during that period of time sewage was discharged from the building into the cesspool.

10. On September 29, 1917, Klopp died, leaving a will, duly probated, wherein he devised the adjoining property to his widow and the corner property he de-

vised as follows: One half to his widow and the other half to three other named devisees.

11. On August 31, 1920, Klopp's widow and the other owners of the corner property conveyed it, "together with the . . . appurtenances whatsoever thereunto belonging or in any wise appurtaining" to certain grantees, and thereafter this property by various conveyances came into the ownership of plaintiff.

12. On May 30, 1940, Klopp's widow died leaving a will wherein she devised the adjoining property to certain devisees, and by various conveyances thereafter title to the adjoining property became vested in defendants, they having purchased it, as aforesaid, by deed dated October 18, 1941.

13. When defendants acquired the adjoining property in 1941 they purchased title insurance from the Land Title Bank and Trust Company.

14. The settlement certificate issued by the Land Title Bank and Trust Company at that time stated that there are "no street improvements in Eighth Street except water pipe".

15. Defendant John L. Wengert attended the settlement and testified that he understood the above statement on the settlement certificate meant that the street did not have a "patented" or cement pavement and he did not understand it to mean there were no sewer connections to the property.

16. Plaintiff's building occupies nearly the entire lot and is built upon solid rock. To the north of the building is Oak Lane Avenue; to the east, Eighth Street; to the south (bordering the adjoining property) is a narrow strip of yard space, 10½ feet wide at the pavement on Eighth Street, narrowing to a width of 3 feet in the rear. To the west is a narrow strip of yard space on the very edge of the embankment leading down into the cut or gorge containing the tracks of the North Pennsylvania Railroad. On

the north side the yard has a depth of 6 feet 8½ inches, and on the south side 18 feet 10¼ inches.

17. Because of the small yard area it is probable that the most feasible plan would be to construct the cesspool for the corner property in the basement of that property.

18. It was testified that the cost of constructing a cesspool there would be about $3,500.

19. There is no reference whatever in the sheriff's deed of the corner property to plaintiff with respect to any alleged right, title or interest or easement in or to the use of any cesspool located upon the property of defendants.

20. The settlement certificate of the Land Title Bank and Trust Company of Philadelphia, issued to defendants contemporaneously with the acquisition of title to the adjoining property by defendants, does not disclose any cesspool easement in favor of plaintiff's corner property.

21. There is nothing whatever in the deed whereby defendants acquired title to their property showing any serviency of that property to the use or right of use by the owner or occupants of the corner property of any cesspool located upon the property of defendants.

22. Neither of defendants at the time that they acquired title to their property had any knowledge whatsoever either of the existence of a cesspool on their own property, or of the existence of any connection between that cesspool and the corner property, or of the existence of any claim of easement to the use of the cesspool on their property by the owner or occupants of the corner property.

23. The first knowledge of defendants of the existence of a cesspool on their property was in the early part of the year 1943, or considerably more than one year after they acquired title.

24. There is no actual evidence whatever that the cesspool located on defendant's property has been used for the purpose of discharging into it sewage, etc., by the owner or by the occupants of the corner property, from the time of the acquisition of their property by defendants, in 1941, down to the present time.

25. There was not at the time defendants purchased their property or, so far as the record discloses, at any time prior thereto, any visible evidence whatever indicating the existence of a cesspool on defendants' property, and there was no vent, nor trap, nor manhole to disclose the existence of a cesspool there, but the place where the cesspool is located was covered over with earth sown with grass and there was no indication whatever of the cesspool's existence. The sewer pipes leading from plaintiff's property to the cesspool are underground. Neither the cesspool nor the sewer pipes were visible or apparent and are not now visible or apparent.

26. Defendants did not receive actual or constructive notice of the existence of the easement claimed by plaintiff and a reasonable inspection of the premises of defendants would not reveal the existence of the alleged easement.

27. Defendants were innocent purchasers for value of their land, without notice, actual or constructive, of the subterranean sewer pipe or pipes and the alleged use of same by plaintiff to discharge sewage in their cesspool.

### Discussion

Plaintiff, who owns a corner property, seeks the right to use a cesspool located on defendants' adjoining property in common with the owner and occupants of the adjoining property. It has brought this action to restrain defendants from interfering with its use of their cesspool. Plaintiff does not seek to establish an easement by prescription, but claims an easement by

implication. The cesspool and sewer pipe connection to plaintiff's property are all underground and the alleged easement is not apparent or visible. Defendants had neither actual nor constructive notice of its existence at the time they acquired the adjoining property. Inasmuch as marks of the burden of the alleged servitude are not open and apparent, we are of the opinion that plaintiff is not entitled to the restraining order prayed for in its bill under the facts of this case.

Plaintiff is the owner of a corner property at Eighth Street and Oak Lane Avenue, Philadelphia. The adjoining property at 6730 North Eighth Street is owned by defendants. Title to both properties was acquired by one Eli L. Klopp in 1897. There was a dwelling house on the adjoining property, now owned by defendants, which Klopp used as his residence until his death in 1917. There is an underground cesspool constructed under the front lawn of this property into which sewage from the dwelling house was discharged. In 1899 or 1900 Klopp constructed a building on the corner property which was primarily intended for commercial uses, and he conducted a drug store there for some years. It has since been used for various commercial purposes and also from time to time as a dwelling. There are no public sewers in this section of the city and he caused a sewer pipe to be run underground from the corner property to the cesspool upon the adjoining property. From about 1900 until 1940 it was used to discharge sewage from the corner property to the cesspool. Upon his death in 1917 Klopp devised the corner property to his widow as to a one-half share and the other half to three named devisees, and he devised the adjoining property to his widow. In 1920 the devisees of the corner property conveyed it to certain grantees and thereafter by various conveyances the property came into the ownership of plaintiff in 1940. In the same year Mrs. Klopp died and by her

will devised the adjoining property to certain devisees and by various conveyances thereafter title to the adjoining property became vested in defendants by purchase on October 18, 1941.

The evidence is clear that the cesspool and the subterranean sewer pipe connecting it with plaintiff's corner property are buried in defendants' yard and are completely covered with soil sown with grass. The cesspool has no vent, trap nor manhole leading to the surface of the lawn and in fact there is no visible or apparent evidence of the presence of the cesspool or the sewer pipe on defendants' property and there was no visible evidence of its existence at the time defendants purchased the adjoining property. Furthermore, there was no evidence or visible signs or marks of any kind that sewage from the corner property was being drained into the cesspool on defendants' property. It is apparent from the testimony that the existence of the alleged servitude would not have been disclosed by an inspection of the premises.

One of the defendants, John L. Wengert, testified that when he purchased the property in 1941 he did not know there was a cesspool on it. He assumed there were public sewers in the neighborhood. It was a year and a half after he purchased the property that he learned about the existence of the cesspool. He noticed water running on the pavement and was told by a neighbor that there was a cesspool on his property. The cesspool had filled up and the water was apparently seeping through the soil, and he employed Mr. Voegele to empty it. He did the work about February 5, 1943. Shortly after Mr. Voegele cleaned out the cesspool he learned that there was a pipe connection from plaintiff's property to the cesspool. He was informed of this fact by a resident of the section. Mrs. Margaret L. Wengert, the other defendant, testified that she did not know that the cesspool was located on the property

until after she was informed of it by her husband early in 1943. Upon cross-examination Mr. Wengert testified that at the time of the purchase of the property he applied for title insurance and that the title company settlement certificate had noted thereon "no street improvements in Eighth Street except water pipe". He explained he thought that referred to the fact that the street did not have a "patent" or cement pavement. He testified that he took it for granted that there was a sewer in the street, because he had seen the inside plumbing in the house. It is evident that the statement on the settlement certificate cannot be construed as notice that plaintiff had the right to discharge sewage through subterranean pipes into a cesspool on defendants' land.

In Becker v. Rittenhouse, 297 Pa. 317, the court stated at page 325:

" 'The law is jealous of a claim to an easement, and the burden is on the party asserting such a claim to prove it clearly': 19 C. J. 958. 'He must show that the user was open and notorious . . . that the use was continuous and uninterrupted'. . . . 'The tendency of the courts is to discourage implied grants of easements, since the obvious result, especially in urban communities is to fetter estates and retard building and improvements, and is in violation of the policy of the recording acts.' "

In Cavany et ux. v. Sherer et ux., 60 D. & C. 462, the court stated at pages 466, 467:

"As a general rule, implied easements are restricted to servitudes which are apparent: 17 Am. Jur. 985, §80. A subterranean drain not open to observation is not an apparent use and, where an estate on which such a drain exists is severed, an easement is not impliedly granted or reserved. See 28 C. J. S., Easements, §33.

"A leading case is Butterworth v. Crawford, 46 N. Y. 349, 7 Am. Rep. 352 (1871). The principles that rule the case before us are stated as follows:

" '. . . the rule of law which creates an easement on the severance of two tenements or heritages, by the sale of one of them, is confined to cases, where an *apparent sign* of servitude exists on the part of one of them in favor of the other; or as expressed in some of the authorities, *where the marks of the burden are open and visible.* (Italics supplied.)

" 'Unless therefore, the servitude be open and visible, or at least, unless there be some apparent mark or sign, which would indicate its existence to one reasonably familiar with the subject, on an inspection of the premises, the rule has no application.' "

In Keller et al. v. Reichl et ux., 53 D. & C. 261, the court held that in order to establish the existence of an easement by implication, it is necessary, among other things, to show that the use was actually known to the purchaser of the servient tenement, or was so open and notorious as to put him on notice of the probable existence of the easement.

The law is clear that where the alleged easement is not the subject of a deed, grant, or conveyance, duly recorded, and is not open, apparent, or visible, it cannot be enforced against subsequent innocent purchasers of the servient tract unless it is proven and established that the purchasers had actual notice that the property was subject to the servitude. See Keller et al. v. Reichl et ux., supra; Cavany et ux. v. Sherer et ux., supra; Held v. McBride, 3 Pa. Superior Ct. 155; Heffley v. Lohr, 149 Pa. Superior Ct. 586; Lauderbach-Zerby Co. v. Lewis, 283 Pa. 250, and 19 C. J. 917, §109(b).

Plaintiff accuses defendants of laches. There is no evidence that the corner property was occupied or in use at the time defendants acquired the adjoining property. For the past 14 years the dwelling portion has

apparently not been habitable or occupied, although a beer distributor occupies the store at the present time. Defendants had no knowledge of the sewer pipe connection and cesspool until February 1943. It is plaintiff that has brought the action, not defendants. Laches is not mere delay to assert a legal right, but delay that works disadvantage or injury: Youse v. McCarthy, 51 Pa. Superior Ct. 306, 311; Baslego v. Kruleskie et ux., 162 Pa. Superior Ct. 174. It cannot be said that plaintiff has been injured or damaged by any delay of defendants. There is no merit in this contention.

Plaintiff has not met the burden imposed upon it under the authorities above cited of proving by clear and convincing evidence that the alleged easement was open, apparent or visible, or that defendants had actual or constructive notice of the alleged servitude at the time the property was purchased. The underground cesspool and subterranean pipes, being completely covered by soil and the lawn of defendants, are concealed and hidden and there are no marks or visible vents or connections to indicate their presence. We do not believe that a reasonable inspection would have disclosed their presence. In our opinion the notation on the settlement certificate mentioned above would not indicate to defendants that he had a cesspool under his lawn and it surely would not indicate that the owner of the corner property had the right to discharge his sewage upon their land. The fact that the corner property was not occupied before and after they acquired title would also lend force to this conclusion. Wherefore we are of the opinion that plaintiff has not set forth a good cause of action and applying the discussion above to the facts as found, we make the following

## Conclusions of Law

1. Plaintiff has no easement express or implied of any nature over, across or under the land of defendants.

2. Plaintiff has no easement by implication or otherwise to discharge sewage by means of a subterranean pipe or pipes under the land of defendants to a cesspool located underground on the land of defendants.

3. Defendants are not guilty of laches.

4. The bill in equity filed herein should be dismissed.

5. Plaintiff must pay the costs.

We accordingly enter the following

### Decree Nisi

And now, March 1, 1948, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the bill in equity filed by plaintiff herein be and it hereby is dismissed, the costs to be paid by plaintiff.

The prothonotary is hereby directed to notify the parties or their counsel of record of the filing of the above adjudication and decree nisi, and unless exceptions thereto are filed within 10 days, or if exceptions having been filed they are dismissed, the decree nisi shall be entered as final by the prothonotary as of course.

### Opinion sur Exceptions to Adjudication

PER CURIAM, April 23, 1948.—In this case plaintiff brought a bill in equity to restrain defendants from interfering with its use of a subterranean cesspool on defendants' land and its use of a subterranean sewer pipe leading from plaintiff's land to the said cesspool in the adjoining land of defendants. The chancellor has filed an adjudication dismissing the bill.

Plaintiff has filed 30 exceptions to the chancellor's findings of fact and conclusions of law and to the decree nisi. The first six (numbered 1 to 6) are exceptions to the chancellor's findings of fact and the next five (numbered 1 to 5) are to the chancellor's conclusions of law. These exceptions present the same questions which were raised at the trial and are fully considered and discussed in the adjudication. We have carefully examined the record and the adjudication and

have carefully considered the testimony adduced at the trial, and we concur in the findings of fact and conclusions of law of the trial judge sitting as chancellor. Following the aforesaid five exceptions to the conclusions of law plaintiff lists 18 unnumbered exceptions which we have numbered seriatim from 6 to 23. Numbers 6 to 16 of these exceptions relate to the chancellor's failure to find certain facts as requested by plaintiff. We have reviewed the evidence in relation to these exceptions and are of the opinion that the facts set forth in exceptions 6 to 16 are immaterial and are neither necessary nor useful in deciding the question before the court. Furthermore, there is no competent evidence of the facts referred to in exceptions 8 and 9 and plaintiff did not meet the burden of proof cast upon it with regard to them, and as to exceptions 11, 12 and 16, we are not convinced by the evidence of the correctness of the facts referred to therein. We therefore concur in the action of the chancellor in failing or refusing to find the facts requested to which exceptions 6 to 16 refer. Exceptions 17 to 22 relate to the refusal of the chancellor to adopt certain conclusions of law requested by plaintiff and referred to in the respective exceptions. We are in accord with the chancellor's conclusions of law which are contrary to those advocated by plaintiff and concur in his refusal to adopt the conclusions of law requested by plaintiff referred to in its exceptions 17 to 22, both inclusive. Exception 22 relates to the chancellor's refusal of a request that the prayer of the bill in equity be granted and the remaining exception 23 relates to the action of the chancellor in entering the decree nisi dismissing the bill in equity. The chancellor's reasons for doing so fully appear in his discussion of the law in his adjudication. We are in accord with the principles of law set forth in the adjudication and the application of those principles to the facts of this case and concur in the action of the chancellor in re-

fusing to grant the prayer of the bill in equity and in entering the decree nisi.

From the record it is apparent that plaintiff has not met the burden imposed upon it under the law of proving by clear and convincing evidence that the alleged easement claimed by plaintiff was open, apparent or visible, or that defendants had actual or constructive notice of the alleged servitude at the time they purchased the land adjoining plaintiff's land. From the evidence it is also clear that a reasonable inspection would not have disclosed the alleged easement and that defendants are not guilty of laches. We are therefore of the opinion that all the exceptions should be dismissed and we make the following

### Final Decree

And now, to wit, April 23, 1948, upon consideration of the foregoing case, all the exceptions to the adjudication in this case are dismissed and the decree nisi entered herein, dated March 1, 1948, ordering the dismissal of the bill in equity filed by plaintiff herein dismissed, is hereby made final and it is ordered, adjudged and decreed that the bill in equity filed by plaintiff herein be and it hereby is dismissed, the costs to be paid by plaintiff.